IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-288-D

RICKY EVANS,                          )
                                      )
            Plaintiff,                )
                                      )     **ORDER**
    v.                                )
                                      )
CAPITOL BROADCASTING COMPANY,         )
INC. and MICROSPACE                   )
COMMUNICATIONS CORPORATION,           )
                                      )
            Defendants.               )

On May 31, 2023, Ricky Evans ("Evans" or "plaintiff") filed a complaint against Microspace Communications Corporation ("MCC") and Capitol Broadcasting Company, Incorporated ("CBC") (collectively "defendants") alleging race and color discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., (count one), race discrimination in violation of 42 U.S.C. § 1981 (count two), religious discrimination in violation of Title VII (count three), retaliation for reporting race, color, and religious discrimination in violation of Title VII (count four), retaliation for reporting race discrimination in violation of 42 U.S.C. § 1981 (count five), hostile work environment based on race, color, and religion in violation of Title VII (count six), and hostile work environment based on his race in violation of 42 U.S.C. § 1981 (count seven) [D.E. 1]. On August 15, 2023, defendants moved to partially dismiss the complaint for failure to state a claim [D.E. 9] and filed a memorandum in support [D.E. 10]. See Fed. R. Civ. P. 12(b)(6). On August 28, 2023, Evans responded in opposition to defendants' partial motion to dismiss [D.E.

14] and filed a memorandum [D.E. 15]. On September 11, 2023, defendants replied [D.E. 17]. As explained below, the court grants in part and denies in part defendants' partial motion to dismiss.

I.

Evans is a 61-year-old African American man who resides in Knightdale, North Carolina. See Compl. [D.E. 1] ¶ 5. Evans is a practicing Muslim who observes the Islamic religion. See id. at ¶ 6. In March 1995, Evans began working for MCC as a network control operator. See id. at ¶¶ 7, 11. Shortly thereafter, MCC promoted Evans to Network Control Engineer I, a position in which Evans remained until MCC terminated his employment on August 12, 2022. See id. at ¶¶ 11–14.

MCC provides satellite system broadcasting and internet streaming services throughout the United States and is based in Raleigh. See id. at ¶ 8. CBC is the parent company of MCC and provides satellite system broadcasting services throughout the United States. See id. at ¶ 9. CBC also has its principal office in Raleigh. See id. MCC and CBC share certain employees and positions. See id.

Evans alleges that Chris Collins ("Collins") engaged in a protracted pattern of discriminatory conduct. In 1997, MCC hired Collins as a Senior Systems Engineer. See id. at ¶ 16. In November 2020, MCC promoted Collins to Network Operations Manager, which made him Evans's direct supervisor. See id. at ¶¶ 16, 27. In February 2022, MCC promoted Collins to Chief Engineer. See id. at ¶ 16.

According to Evans, since 1997, Collins would sometimes enter an MCC conference room while Evans was studying the Koran and make derogatory remarks about Evans's practice of the Islamic faith, minorities, and the LGBTQ community, even sometimes referring to Evans as a "jihadist." See id. at ¶ 17. Evans also alleges that since Collins's hiring and until Evans's

2

termination, Collins routinely made discriminatory comments about African Americans, illegal immigrants, and the LGBTQ community. See id. at ¶¶ 18–21.

On June 26, 2020, in the wake of George Floyd's death, MCC and CBC's CEO, Jimmy Goodman ("Goodman"), sent an email to MCC staff noting the existence of systemic racism and police brutality, and he asked for feedback from persons of color on their experience as members of the MCC family. See id. at ¶¶ 22–24. On August 21, 2020, the Vice President of Human Resources at CBC followed up with a diversity and inclusion survey to CBC staff. See id. at ¶¶ 25–26.

On April 1, 2021, Evans responded to these two communications with an email to Goodman detailing some of Collins's alleged racist and bigoted behavior. See id. at ¶ 28. In the email, Evans informed Goodman that Collins had a long history of racist behavior towards African Americans, Latinos, and Hispanics, and that Collins had remarked that the Diversity, Equity, and Inclusion initiative was "just the Company trying to save face." Id. at ¶ 30. Evans also told Goodman about Collins's specific "hate-filled political statements towards people of color" and toward Evans specifically. Id. at ¶ 31. Evans told Goodman that he believed Collins was attempting to get Evans fired from MCC. See id. at ¶ 32.

Evans alleges that defendants refused to investigate Evans's claims and took no disciplinary action against Collins. See id. at ¶ 33. Evans alleges that Collins then wielded his influence to directly affect Evans's opportunities for promotion, pay increases, performance evaluations, job duties, training opportunities, and ultimately his employment status. See id. at ¶¶ 33–35. Evans alleges that before Collins became his supervisor, he always received positive performance reviews, but that he received negative performance reviews once Collins became his supervisor. See id. at ¶¶ 36–37. Following a negative performance review on July 28, 2021, MCC placed Evans on a 90-day performance improvement plan ("PIP"), which reprimanded Evans for using his cell phone

3

during a training event, even though white employees used laptops and cell phones during the same meetings and did not receive a PIP for those actions. See id. at ¶¶ 37–39.

Evans alleges that a Vice President and General Manager of MCC, an African American man named Cyrus Wilson ("Wilson"), made Collins rewrite the PIP because it was too negative and made MCC look bad. See id. at ¶¶ 40–41. On June 10, 2022, even though Wilson showed support for Evans, MCC placed Evans on a second PIP. See id. at ¶¶ 42–43. The second PIP expressly warned Evans not to use the conference room, which was where Evans would pray and read the Koran during his breaks. See id. at ¶ 43. Evans alleges that he used the conference room for 20 years in this way and that Collins added this prohibition to the PIP to target Evans because of his religion. See id. at ¶ 46. Evans also alleges that Collins placed Evans on a wiring project knowing that it was not Evans's area of expertise to intentionally set Evans up to fail under the second PIP. See id. at ¶ 44. Evans also alleges that the second PIP faulted Evans for failing to properly conduct station checks, but that another similarly situated white employee did not perform his station checks for three to four months and was not reprimanded or placed on a PIP. See id. at ¶ 45. Evans also alleges other instances where MCC offered day-shift opportunities and training to white employees but not to him. See id. at ¶¶ 49–52.

On April 21, 2022, Evans sent another email to Wilson with more complaints about Collins, but instead of investigating the complaints, MCC tasked Wilson with terminating Evans's employment on August 12, 2022. See id. at ¶¶ 47–48. On August 19, 2022, Evans filed an EEOC complaint against MCC alleging discrimination and retaliation based on his race, color, and religion. See id. at ¶ 3; [D.E. 1-1]. On March 2, 2023, Evans received a right to sue letter from the EEOC. See Compl. ¶ 4; [D.E. 1-2].

4

Case 5:23-cv-00288-D-KS    Document 18    Filed 02/09/24    Page 4 of 20

Evans's complaint contains seven counts against MCC and CBC. In count one, Evans alleges a Title VII discrimination claim on the basis of race and color. See Compl. ¶¶ 53–69. In count two, Evans alleges a section 1981 race discrimination claim. See id. at ¶¶ 70–89. In count three, Evans alleges a Title VII religious discrimination claim. See id. at ¶¶ 90–108. In count four, Evans alleges a Title VII retaliation claim for reporting race and religious discrimination. See id. at ¶¶ 109–18. In count five, Evans alleges a section 1981 retaliation claim for reporting race discrimination. See id. at ¶¶ 119–29. In count six, Evans alleges a Title VII hostile work environment claim based on race, color, and religion and in retaliation for protected activity under Title VII. See id. at ¶¶ 130–41. In count seven, Evans alleges a section 1981 hostile work environment claim based on race. See id. at ¶¶ 142–54. In his retaliation claims, Evans alleges that the protected activities he undertook were the two emails dated April 1, 2021, and April 21, 2022, respectively, to Goodman and Wilson complaining about discrimination. See id. at ¶¶ 111–14.

II.

Defendants move to partially dismiss Evans's complaint for failure to state a claim upon which relief can be granted. See [D.E. 9, 10]; Fed. R. Civ. P. 12(b)(6). Defendants ask the court to dismiss all claims against the parent corporation CBC and to dismiss counts four, six, and seven against MCC for failure to state a claim upon which relief can be granted. See [D.E. 10] 3.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at

5

570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

Defendants move to dismiss CBC, MCC's parent corporation, because a parent corporation is not legally responsible for the alleged wrongful conduct of its subsidiary corporation. See [D.E. 9] 1; [D.E. 10] 6–7. Evans responds that CBC can be held liable as a parent corporation because his complaint plausibly alleges that CBC meets the United States Court of Appeals for the Fourth

6

Circuit's test for "integrated employer" or single entity liability. See [D.E. 15] 3–5. Defendants reply that Evans fails to plausibly allege the requisite control or that CBC and MCC are joint employers or integrated employers. See [D.E. 17] 1–4.

It is a general principle of corporate law deeply "ingrained in our economic and legal systems" that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiary corporation. United States v. Bestfoods, 524 U.S. 51, 61 (1998) (quotation omitted). Exceptions to this general rule, however, exist. Moreover, under Title VII, more than one collective entity can be an individual's employer. See, e.g., Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 410 (4th Cir. 2015). Under Title VII, a parent corporation can be an employer when it exercises excessive control in one of two ways: either (1) when it "control[s] the employment practices and decisions of the subsidiary," or (2) when it so "dominate[s] the subsidiary's operations that the parent and the subsidiary are one entity and thus one employer." Johnson v. Flowers Indus., Inc., 814 F.2d 978, 981 (4th Cir. 1987). Since Johnson, two separate doctrines have emerged: the joint employer doctrine and the integrated employer doctrine. See Butler, 793 F.3d at 408 n.3.

Under the joint employer doctrine, courts analyze whether a putative employer "exercises significant control over the same employees." Id. at 410 (cleaned up). The Fourth Circuit has adopted a hybrid test for assessing joint employment, which requires analyzing:

> (1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work; (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; (5) the length of time during which the individual has worked for the putative employer; (6) whether the putative employer provides the individual with formal or informal training; (7) whether the individual's duties are akin to a regular employee's duties; (8) whether the individual is assigned solely to the putative

7

employer; and (9) whether the individual and putative employer intended to enter into an employment relationship.

Id. at 414. The first three factors are the most important, but no one factor is determinative. See id. at 414–15.

The second doctrine outlined in Johnson is commonly referred to as the integrated employer doctrine and requires a court to examine four factors. See Bittle-Lindsey v. Seegars Fence Co., No. 21-1044, 2022 WL 1566770, at *3 (4th Cir. May 18, 2022) (unpublished). The four factors are "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." Id. (quotation omitted). No single factor is determinative, but centralized control of labor operations is the most important factor. See id.; Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999), abrogated on other grounds by Arbaugh v. Y & H Corp., 546 U.S. 500 (2006).

Analyzing the factors under either doctrine is a "fact-specific" inquiry, and discovery sometimes is required to "fully bear out the defendants' relationship to each other." West v. J.O. Stevenson, Inc., 164 F. Supp. 3d 751, 764 (E.D.N.C. 2016); see Ali v. Worldwide Language Res., LLC, ___ F. Supp. 3d ___, 2023 WL 5120224, at *12 (E.D.N.C. Aug. 9, 2023); Tasciyan v. Med. Numerics, 820 F. Supp. 2d 664, 672 (D. Md. 2011). Notwithstanding the fact-specific inquiry under each doctrine, the "complaint still must plausibly allege some facts to support either the 'joint employment' or 'integrated employer' theory, or else risk undermining the Twombly-Iqbal standard." West, 164 F. Supp. 3d at 764.

Evans's complaint fails to plausibly allege "joint employer" liability. Evans does not plausibly allege CBC's day-to-day supervision of the work at MCC, that CBC furnishes the equipment for MCC's work, or other facts relevant under the joint employment doctrine. See, e.g.,

8

id. at 764–66. This conclusion comports with the Butler court's recognition that joint employer liability applies in "unique circumstances," such as those present with temporary staffing agencies. See Butler, 793 F.3d at 410, 414.

As for whether CBC and MCC qualify as "integrated employers," Evans plausibly alleges collective control, overlapping corporate functions, and centralized labor relations. For example, Evans pleads that MCC and CBC share a principal office location, see Compl. at ¶¶ 8–9, that Goodman is the owner and CEO of both entities, see id. at ¶ 22, and that CBC Vice President of Human Resources, Angie Emerline, communicated with staff of MCC to solicit feedback about company culture and to direct all MCC staff feedback to her. See id. at ¶¶ 24–26; [D.E. 15] 2.

Defendants respond that Evans only directly alleges that MCC was his employer and that Evans fails to plausibly allege CBC's domination of MCC's decisionmaking. See [D.E. 10] 6–7; [D.E. 17] 1–3; Miller v. Gerber Collision (Ne.), Inc., No. 4:19-CV-18, 2019 WL 1960337, at *3 (E.D.N.C. May 2, 2019) (unpublished). The complaint in Miller, however, contained no factual allegations relevant to the integrated employer doctrine. See Miller, No. 4:19-CV-18, [D.E. 1-3] (E.D.N.C. Jan. 30, 2019). Here, Evans plausibly alleges sufficient facts to eke across the line under the integrated employer doctrine. See, e.g., West, 164 F. Supp. 3d at 765–66; Gilbert v. Freshbikes, LLC, 32 F. Supp. 3d 594, 602–03 (D. Md. 2014). Whether Evans will be able to survive CBC's inevitable motion for summary judgment is an issue for another day. Cf. Ali, 2023 WL 5120224, at *12.

B.

Alternatively, defendants argue that the court must dismiss CBC from Evans's Title VII claims because Evans failed to file an EEOC charge against CBC. See [D.E. 10] 7–8. Generally, a plaintiff cannot bring a Title VII claim against a party that plaintiff failed to name in the EEOC

9

charge. See 42 U.S.C. § 2000e-5(f)(1); Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005); Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998); Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 458–59 (4th Cir. 1988); Mickel v. S.C. State Emp. Serv., 377 F.2d 239, 241–42 (4th Cir. 1967); Dickey v. Greene, 603 F. Supp. 102, 105 (E.D.N.C. 1984). Courts in the Fourth Circuit, however, have recognized the "substantial identity" exception that limits this general rule where "the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process." E.E.O.C. v. Am. Nat'l Bank, 652 F.2d 1176, 1186 n. 5 (4th Cir. 1981); see Chastang v. Flynn & Emrich Co., 365 F. Supp. 957, 964 (D. Md. 1973) (holding that "where there is a substantial, if not complete, identity of parties before the EEOC and the court, it would require an unnecessarily technical and restrictive reading of" Title VII to find a failure to exhaust administrative remedies), aff'd in relevant part, 541 F.2d 1040 (4th Cir. 1976); Keener v. Universal Cos., 128 F. Supp. 3d 902, 915–16 (M.D.N.C. 2015); Mayes v. Moore, 419 F. Supp. 2d 775, 782–83 (M.D.N.C. 2006).

> Courts consider the following factors in analyzing substantial identity:
>
> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulting in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Stevenson v. Bost, No. 5:10-CV-487, 2011 WL 2181735, at *5 (E.D.N.C. June 3, 2011) (unpublished) (quotation omitted); see Mayes, 419 F. Supp. 2d at 782. Evans argues that CBC and MCC are substantially identical entities for purposes of EEOC exhaustion. See [D.E. 15] 6–7. Defendants respond that Evans bears the burden of demonstrating substantial identity and has failed

10

to meet his burden. See [D.E. 17] 4–7; Shaughnessy v. Duke Univ., No. 1:18-CV-461, 2018 WL 6047277, at *3 (M.D.N.C. Nov. 19, 2018) (unpublished).

As for the first factor, defendants correctly note that Evans could reasonably ascertain CBC's identity when he filed his EEOC charge. After all, Evans's allegations and emails reference MCC and CBC's shared ownership and leadership. See [D.E. 1] ¶¶ 22, 25; [D.E. 17] 5. Thus, the first factor weighs against finding substantial identity.

The second and third factors reflect the two-fold purpose of the naming requirement, that is, providing notice and opportunity for voluntary conciliation. See Shaughnessy, 2018 WL 6047277, at *4; Keener, 128 F. Supp. 3d at 915–16; Mayo v. Questech, Inc., 727 F. Supp. 1007, 1011 (E.D. Va. 1989). Defendants cite Shaughnessy and argue that Evans fails to plausibly allege that the interests of CBC and MCC are so similar to render naming CBC unnecessary and that no allegations suggest that CBC would not be prejudiced. See [D.E. 17] 6; Shaughnessy, 2018 WL 6047277, at *4–5; Campbell v. Pearl River Techs., LLC, No. 8:22-cv-949, 2023 WL 4421405, at *6 (D. Md. July 10, 2023) (unpublished).

Evans's complaint provides some factual support for the second and third factors. First, CBC's leadership sought feedback on the employment environment at MCC for minorities, indicating a shared interest in conciliating employment issues at CBC and MCC. See Compl. ¶¶ 22–26. Second, the EEOC's Right to Sue Letter copied "Angela Emerline[,] Capitol Broadcasting Company, Inc.," and did not list a separate representative for MCC. See [D.E. 1-2] 3. These facts plausibly suggest both a shared interest in resolving the employment claims at issue in Evans's EEOC charge and a lack of prejudice to CBC.

As for the fourth factor, that the EEOC identified Emerline as a relevant contact for Evans's EEOC charge indicates that MCC identified CBC as relevant to Evans's employment relationship.

11

Viewing the complaint in the light most favorable to Evans, the court declines to dismiss CBC. Whether Evans will be able to survive CBC's inevitable motion for summary judgment is an issue for another day.

C.

Defendants argue that Evans's Title VII and section 1981 hostile work environment claims in counts six and seven fail to state a claim upon which relief can be granted. See [D.E. 9] ¶¶ 4, 5; [D.E. 10] 8–15. First, defendants argue that Evans's Title VII hostile work environment claim fails because Evans's EEOC charge did not identify conduct capable of supporting a hostile work environment claim. See [D.E. 10] 9.

Before a person may file a claim in court under Title VII, the person has to file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e–5(f)(1). An EEOC charge suffices "only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Chacko, 429 F.3d at 508 (quotation omitted); see Miles v. Dell, Inc., 429 F.3d 480, 491–92 (4th Cir. 2005). Moreover, the content of the EEOC charge determines the scope of plaintiff's right to maintain a Title VII claim in court. See, e.g., Hentosh v. Old Dominion Univ., 767 F.3d 413, 416–17 (4th Cir. 2014), abrogated on other grounds by Fort Bend Cnty. v. Davis, 139 S. Ct. 1843 (2019); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see Sydnor v. Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012); Miles, 429 F.3d at 491–92; Bryant, 288 F.3d at 132–33. "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges

12

discrimination on a separate basis, such as sex." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Davis, 139 S. Ct. 1843; see Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011). The same principle applies with respect to a plaintiff who files an EEOC charge with respect to one adverse employment action (such as a failure to rehire), but then seeks to expand the formal litigation claim to a separate adverse employment action (such as an earlier termination). See Bonds, 629 F.3d at 379–80; Jones, 551 F.3d at 300; Miles, 429 F.3d at 491–92; Chacko, 429 F.3d at 509; Bryant, 288 F.3d at 132–33; Evans, 80 F.3d at 963. The rationale behind these principles concerning the scope of an EEOC charge relates to providing fair notice to an employer concerning a charge and to permitting the EEOC to investigate and (if appropriate) resolve the dispute without a lawsuit. See, e.g., Chacko, 429 F.3d at 508–09, 513; Miles, 429 F.3d at 491.

Defendants argue that Evans failed to include a pattern of conduct to support a hostile work environment claim in his EEOC charge. See [D.E. 10] 8–9 (citing Chacko, 429 F.3d at 509–12); cf. [D.E. 1-1] 2. In support, defendants note that Evans's EEOC charge included no allegations describing a pattern of conduct. Rather, Evans only alleged that he was wrongly "disciplined and . . . discharged" and that he believed the reasons given for those discrete acts were pretexts for "illegal discrimination and retaliation." [D.E. 1-1] 2. Thus, Evans did not put the EEOC or his employer on notice of a hostile work environment claim. See id.

In response, Evans argues that his EEOC charge included a hostile work environment claim because he alleged ongoing conduct by using the word "beginning" to indicate the illegal conduct was ongoing after Collins became his boss. See [D.E. 15] 7–8. In support, Evans cites Sydnor, 681 F.3d at 594, and argues that a hostile work environment claim need only be "reasonably" related when it arises from discrete acts of discrimination based on a protected class. See [D.E. 15] 8.

13

The court rejects Evans's argument. In Sydnor, the Fourth Circuit did not analyze a hostile work environment claim. See Sydnor, 681 F.3d at 594–97. Rather, in Sydnor, the Fourth Circuit analyzed a disability discrimination claim under the Americans with Disabilities Act for an alleged failure to accommodate. See id. In Sydnor, plaintiff's ADA discrimination claim in her complaint was reasonably related to her EEOC charge of denial of a reasonable accommodation because her EEOC charge discussed the discrete discriminatory act of failing to reasonably accommodate her disability. See id. at 592–94. The Fourth Circuit held that plaintiff's EEOC charge did not have to include a specific reasonable accommodation in order for her to proceed with her ADA claim in court. See id. at 592, 594–95.

Sydnor does not help Evans. Hostile work environment claims are materially different than discrete acts of discrimination. See, e.g., Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).

Evans also cites Fulmore v. City of Greensboro, 834 F. Supp. 2d 396, 423 (M.D.N.C. 2011), as an example where a court concluded that an EEOC charge sufficiently included a hostile work environment claim. See id.; [D.E. 15] 8. The EEOC charge in Fulmore, however, alleged continuing racial harassment that reasonably related to plaintiff's hostile work environment claim. See Fulmore, 834 F. Supp. 2d at 423. Specifically, the EEOC charge in Fulmore described "continuing harassment" based on plaintiff's race. See id. In Fulmore, the court found that such allegations were materially different than plaintiff's discrete adverse employment action allegations. See id. Thus, Fulmore does not help Evans.

The word "beginning" in Evans's EEOC charge did not suffice to put the EEOC or Evans's employer on notice that he intended to bring a hostile work environment claim when the only illegal acts alleged were discriminatory discipline, termination, and retaliation. Thus, Evans failed to

14

exhaust administrative remedies for his Title VII hostile work environment claim. See, e.g., Chacko, 429 F.3d at 509–13; Stevens v. Cabarrus Cnty. Bd. of Educ., 514 F. Supp. 3d 797, 813–15 (M.D.N.C. 2021); Jackson v. Rex Hosp., Inc., No. 5:20-cv-192, 2020 WL 6532829, at *5 (E.D.N.C. Nov. 5, 2020) (unpublished); Shipman v. United Parcel Serv., Inc., No. 5:12-CV-589, 2013 WL 5525005, at *9 (E.D.N.C. Oct. 3, 2013) (unpublished); Bannister v. Wal-Mart Stores E., L.P., 843 F. Supp. 2d 610, 617–18 (E.D.N.C. 2012). Accordingly, the claim is not "actionable," and the court dismisses Evans's Title VII hostile work environment claim in count six. Morgan, 536 U.S. at 115; see Donald v. Novant Health, Inc., __ F. Supp. 3d __, 2023 WL 5672832, at *3 (E.D.N.C. Sept. 1, 2023).

Alternatively, even if Evans exhausted his administrative remedies for his Title VII hostile work environment claim, Evans's Title VII and section 1981 hostile work environment claims fail to allege conduct sufficiently severe or pervasive to alter the conditions of his employment. To demonstrate a hostile work environment claim, an employee must prove that (1) he experienced unwelcome conduct, (2) the conduct was based on a protected characteristic under the relevant statute, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. See, e.g., Laurent-Workman v. Wormuth, 54 F.4th 201, 210–12 (4th Cir. 2022); Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 229 (4th Cir. 2022); Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019); Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); Okoli v. City of Balt., 648 F.3d 216, 220–21 (4th Cir. 2011); E.E.O.C. v. Fairbrook Med. Clinic, P. A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Coleman v. Altec, Inc., No. 5:16-CV-954,

15

2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (unpublished); Brown v. Wake Cnty. Gov't, No. 5:16-CV-806, 2017 WL 2982971, at *5 (E.D.N.C. July 12, 2017) (unpublished). An employee also must show that his protected characteristic was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134, 142 (4th Cir. 2007).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on a protected characteristic, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter his conditions of employment. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Forklift Sys., Inc., 510 U.S. at 23; see Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Forklift Sys., Inc., 510 U.S. at 23; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII and section 1981 do not create "a general civility code for the

16

American workplace." Oncale, 523 U.S. at 80; see Irani v. Palmetto Health, 767 F. App'x 399, 416 (4th Cir. 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Bonds, 629 F.3d at 385–86; Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006), abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81; Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207–10 (4th Cir. 2014); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli, 648 F.3d at 220–22.

"The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by simple recitation of the words used or the physical acts performed." Oncale, 523 U.S. at 81–82. "Common sense, and an appropriate sensitivity to social context," will enable courts to distinguish between teasing, distasteful jokes, sporadic rude language, vulgarity, stupidity, offhand comments, and insensitive treatment and "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive" based on a protected characteristic. Id. at 82; see Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772–73 (4th Cir. 1997).

17

Although hostile work environment claims often involve repeated conduct, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (quotations and alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5. A "supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998); see Boyer-Liberto, 786 F.3d at 278.

Evans alleges that Collins made derogatory remarks about African Americans, Evans's Islamic faith, minorities, and the LGBTQ community over a 25-year period. See Compl. ¶¶ 17–21. Although Collins became Evans's supervisor in November 2020, several of these remarks, while rude, insensitive, and derogatory, reflect Evans's and Collins's differing social views, as Evans himself described in his EEOC charge. See [D.E. 1-1] 2. Furthermore, although Evans alleges this conduct began in 1997 and continued for approximately 25 years during his employment with MCC, Evans's complaint includes very few specific instances of Collins's alleged statements. Even viewing Evans's complaint in the light most favorable to Evans, Evans fails to allege conduct sufficient to state a hostile work environment claim. See, e.g., Breeden, 532 U.S. at 270–72; Benjamin v. Sparks, 173 F. Supp. 3d 272, 279–80, 285–86 (E.D.N.C. 2016); O'Neal v. Harrison, No. 5:14-CV-198, 2015 WL 1084321, at *7 (E.D.N.C. Mar. 11, 2015) (unpublished). Accordingly, the court dismisses Evans's Title VII and section 1981 hostile work environment claims in counts six and seven.

### D.

Defendants argue that Evans fails to state a Title VII retaliation claim because he failed to allege retaliation in his EEOC charge narrative. See [D.E. 10] 16. Specifically, defendants argue

18

that Evans's EEOC charge narrative is insufficient to support his Title VII retaliation claim because he only refers to "retaliation for . . . defending Muslims." [D.E. 10] 17 (quotation omitted) (citing Miles, 429 F.3d at 492); see [D.E. 17] 8.

The court rejects defendants' argument. First, unlike the cases where plaintiffs only checked the retaliation box and provided no other details in the EEOC charge, Evans specifically alleged retaliatory conduct in his EEOC charge. See, e.g., [D.E. 1-1] 2 ("I believe I have been discriminated against due to my race[,] black[,] and in retaliation for engaging in protected activity[,] including but not limited to defending Muslims . . . ."). Second, in Miles, 429 F.3d at 491–92, the claim failed administrative exhaustion not because the protected activity alleged in the EEOC charge did not identify a qualifying protected activity, but because plaintiff failed to put the defendant on notice of his retaliation claim at all. See id. Specifically, in Miles, the plaintiff did not check the retaliation box on the EEOC form, and plaintiff's description of the alleged Title VII violations did not "mention" retaliation. Id. at 492. Thus, the court denies defendants' motion to dismiss Evans's Title VII retaliation claim in count four.

III.

In sum, the court GRANTS IN PART and DENIES IN PART defendants' partial motion to dismiss [D.E. 9]. The court DENIES defendants' motion to dismiss Capitol Broadcasting Company, Incorporated as a defendant and DENIES defendants' motion to dismiss plaintiff's Title VII retaliation claim in count four. The court GRANTS defendants' motion to dismiss plaintiff's Title VII and 42 U.S.C. § 1981 hostile work environment claims in counts six and seven and DISMISSES WITHOUT PREJUDICE plaintiff's Title VII and 42 U.S.C. § 1981 hostile work environment claims.

SO ORDERED. This 9 day of February, 2024.

                                                             JAMES C. DEVER III
                                                             United States District Judge